**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| BRYAN MIKULACO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 3:10-cv-00041-RCJ-VPC |
| vs. | ) | |
| | ) | |
| AEGIS WHOLESALE CORP. et al., | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |

This is a standard foreclosure case involving one property. The Complaint is a MERS-conspiracy type complaint listing thirteen causes of action. The case is part of Case No. 2:09-md-02119-JAT in the District of Arizona, and Judge Teilborg has remanded those parts of the first, third, fourth, and tenth though twelfth claims that do not involve MERS. The wrongful foreclosure claim remains with Judge Teilborg. A motion to dismiss (ECF No. 40) is pending before the Court. For the reasons given herein, the Court grants the motion.

**I.   THE PROPERTY**

Bryan Mikulaco gave lender Jack White Custom Homes, Inc. ("Jack White") a $164,835 promissory note to purchase property in Douglas County[1] (the "Property"). (*See* Deed of Trust

---

[1] Douglas County Assessor's Parcel No. 1220-12-111-003 (*Id.* Ex. A). The street address is revealed in the Second Refinance DOT as 1162 Jo Ln., Gardnerville, NV 89410, (*see* Second REFI DOT 3, Dec. 21, 2006, ECF No. 41-5), and the street address may not have yet been

("DOT") 1, Oct. 10, 2003, ECF No. 41-2). The trustee was Stewart Title ("Stewart"). (*See id.* 1).

Plaintiff refinanced the property for $250,000 to lender Victor L. Wilson as trustee for the Victor L. Wilson Trust dated 3/18/80, with trustee Western Title Co. (*See* First REFI DOT 1, Apr. 27, 2006, ECF No. 41-3). Plaintiff refinanced the property a second time to lender Aegis Wholesale Corp. for $620,000, with trustee Stewart. (*See* Second REFI DOT 1–2, Dec. 21, 2006, ECF No. 41-5). The second refinance was the first MERS DOT and the first DOT to list the street address. After the second refinance, Mikulaco obtained a home equity line of credit ("HELOC") from Bank of America, NA ("BOA") against the Property, with a credit limit of $127,000 and with PRLAP, Inc. as trustee. (*See* HELOC DOT 1–2, Mar. 2, 2007, ECF No. 41-7). At this point, the Second REFI DOT was in first position, the HELOC DOT was in second position, and Mikulaco appears to have realized approximately $455,000 in gross profit by refinancing the Property.

MERS purported to transfer the Second REFI DOT and the note it secured to U.S. Bank National Association ("USBNA"). (*See* Assignment, Mar. 31, 2009, ECF No. 41-9). Jack White substituted itself as trustee the same day the Property was first refinanced and in the same document reconveyed the Property from Plaintiff to itself as trustee. (*See* Substitution and Reconveyance, Apr. 27, 2006, ECF No. 41-4). This substitution was rendered moot by the second refinance, which named Stewart as trustee. Finally, USBNA substituted National Default Servicing Corp. ("NDSC") as trustee on the Second REFI DOT. (Substitution, Mar. 31, 2009, ECF No. 41-10). This is the substitution that matters for the present foreclosure.

As of January 9, 2009, Planitiff had defaulted on the Second REFI DOT in the amount of $19,193.98. (*See* Notice of Default ("NOD") 1, Jan. 9, 2009, ECF No. 41-8). NDSC filed the

---

assigned at the time of purchase. The Property is in an unirrigated, desert area southeast of Reno, and the satellite imagery on Google Maps indicates the area has only very recently been developed. This would also account for the extreme increase in value of the Property since 2003, as reflected by the multiple refinancings.

NOD. (*See* NOD 2).  NDSC noticed a sale for May 6, 2009, (*see* First Notice of Trustee's Sale ("NOS") 1–2, Apr. 13, 2009, ECF No. 41-11), and again for Nov. 4, 2009, (*see* Second NOS 1–2, Oct. 5, 2009, ECF No. 41-12).  The wrongful foreclosure claim remains with Judge Teilborg, but the foreclosure may have been statutorily defective under section 107.080(2)(c).  Even assuming MERS had the ability to transfer the beneficial interest under the Second REFI DOT to USBNA, or that the note followed the Second REFI DOT as a matter of law, MERS didn't purport to make this transfer to USBNA, and USBNA didn't purport to substitute NDSC as trustee, until approximately three months after NDSC had already filed the NOD.

## II.   ANALYSIS

The remanded claims are those parts of the following claims that do not involve MERS: (1) Unfair Lending Practices Under Nevada Revised Statutes ("NRS") section 598D.100; (3) Injunctive Relief; (4) Declaratory Relief (violation of section 598D.100(3)); (10) Civil Conspiracy; (11) Racketeering Under NRS section 207.470; and (12) Unjust Enrichment.

First, Plaintiff obtained the loans between October 10, 2003 and March 2, 2007.  The statute of limitations under section 598D.100 is three years, *see* Nev. Rev. Stat. § 11.190(3)(a), and Plaintiff brought the present case on December 8, 2009.  The claim is not time-barred as to the mortgages presently in effect—the second refinance and the HELOC—but the claim is time-barred as to the previous mortgages.  Section 598D.100 was amended in 2007, with an effective date of June 13, 2007. *See* 2007 Nev. Stat. 2844–46.  Therefore, the prior version of the statute applies to all mortgages in the present case.  The statute does not apply to mortgages that qualify as "residential mortgage transactions" under HOEPA, where a security interest is retained against the property to finance its acquisition or construction. *See* Nev. Rev. Stat, § 598D.040 (2005); 15 U.S.C. § 1602(aa)(l), (w).  The two non-time-barred mortgages, however, were not purchase money mortgages, but a refinance and a HELOC, so the statute applies.  The prior version of the statute made it actionable if a lender made "a home loan to a borrower based

1  solely upon the equity of the borrower in the home property and without determining that the
2  borrower has the ability to repay the home loan from other assets . . . ." Nev. Rev. Stat. §
3  598D.100 (2006).  Plaintiffs must "alleg[e] specific facts showing how Defendants failed to
4  adhere to this statutory requirement . . . ." *Urbina v. Homeview Lending, Inc.*, 681 F. Supp. 1254,
5  1259–60 (D. Nev. 2009) (Hunt, C.J.) (dismissing a claim under the current version of the
6  statute).

7    Plaintiff has not alleged facts indicating a violation of the statute.  Plaintiff alleges that
8  the loan was based on "stated income" with no verification of that income. (*See* Compl. ¶ 51,
9  Dec. 8, 2009, ECF No. 1-1).  Plaintiff fails to allege whether he in fact incorrectly stated his
10 income on the loan application documents, which might constitute mortgage fraud, and which
11 would obviate the present claim.  Moreover, the statute does not require any particular
12 verification method, but only a determination of the ability of the borrower to repay from assets
13 other than an estimated future increase in equity.  Plaintiff appears to admit that the lender gave
14 him the loan based on the income he reported to the lender.  This is sufficient under the statute.
15 "The lender should have known I was lying about my income" is not a particularly convincing
16 argument, at least not under the prior version of the statute.  Under the current version of the
17 statute, which requires a "commercially reasonable means" of determining the ability to repay,
18 an argument could be made that a lender who does not verify stated income beyond the signature
19 of the borrower has not fulfilled its duties under the statute, but the prior version of the statute
20 applies in this case.  The Court dismisses this claim.

21   Second, the civil conspiracy claim fails because Plaintiff does not allege any agreement
22 to engage in unlawful activity.  He simply concludes that a conspiracy existed between banks,
23 trustees, and others because these agencies were all in some way involved with foreclosures
24 generally.  The Court will dismiss this claim.

25   Third, under Nevada's RICO statute, a private party can bring a civil action for treble

1  damages, attorney's fees, and costs for injures sustained by a violation of NRS section 207.400.
2  *See* Nev. Rev. Stat. § 207.470.  Plaintiff alleges Defendants engaged in racketeering.  Plaintiff,
3  however, nowhere identifies which unlawful act under section 207.400 he believes Defendants to
4  have committed.  Plaintiff simply quotes the definition of "racketeering" under section 207.390
5  and allege that Defendants engaged in racketeering through predatory lending practices.
6  Plaintiff has not identified two predicate offenses required to constitute "racketeering."  *See*
7  § 207.390.  Such crimes include murder, manslaughter, mayhem, certain batteries, kidnapping,
8  sexual assault, arson, robbery, extortion, seduction, forgery, burglary, grand larceny, bribery,
9  assault with a deadly weapon, certain frauds, etc. *See* § 207.360.  Insofar as the predicate acts are
10 intended to be frauds based on the MERS system, the claim remains with Judge Teilborg.  The
11 Court will dismiss this claim.
12         Fourth, the unjust enrichment claim will be dismissed because it is undisputed that the
13 relationship between the parties is governed by an express, written contract.  *LeasePartners*
14 *Corp. v. Robert L. Brooks Trust*, 942 P.2d 182, 187 (Nev. 1997).
15         Finally, the claims for injunctive and declaratory relief will be dismissed insofar as they
16 rely on any of the remanded claims.
17 ///
18 ///
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion to Dismiss (ECF No. 40) is GRANTED. Because the claims remain with Judge Teilborg, the Court makes no ruling on the wrongful foreclosure claim or the injunctive and declaratory relief claims insofar as those claims relate to the wrongful foreclosure claim. *See* Nev. Rev. Stat. § 107.080 (procedurally improper foreclosure); *Collins v. Union Fed. Sav. & Loan Ass'n*, 662 P.2 610, 623 (Nev. 1983) (foreclosure absent default).

IT IS SO ORDERED.

Dated: This 8th day of September, 2011.

_____
ROBERT C. JONES
United States District Judge